UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KAREN THOMAS,

        Plaintiff,

    v.                                       Case No. 21-C-979

CITY OF GREEN BAY,

        Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Karen Thomas filed this action against her former employer, the City of Green Bay, alleging that the City interfered with her rights under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, *et seq.*, and retaliated against her for exercising her rights by constructively discharging her. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. This matter comes before the court on the City's motion for summary judgment. For the following reasons, the City's motion will be denied.

## BACKGROUND

The City of Green Bay hired Ms. Thomas on June 13, 2018, as a Transit/Bus Operator for Green Bay Metro. Def.'s Proposed Findings of Fact (DPFOF) ¶ 1, Dkt. No. 16. On September 30, 2019, Ms. Thomas' husband underwent a total right knee arthroplasty. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 3, Dkt. No. 22. Prior to the surgery, Ms. Thomas discussed her need to apply for caretaking leave under state and federal FMLA with the City to ensure that she was able to assist her husband after his surgery. *Id.* ¶ 4. Mr. Thomas' doctor, James Grace, M.D., completed an initial Health Care Provider Certification form on October 8, 2019. *Id.* ¶ 5. He indicated that

Mr. Thomas would need care on an intermittent basis from September 30, 2019, through December 23, 2019. *Id*. ¶ 6; *see also* Dkt. No. 17-3 at 2–3. Dr. Grace also noted that Mr. Thomas would require monthly follow-up appointments and physical therapy. PPFOF ¶ 7. He stated that, for the first two weeks, Mr. Thomas would need assistance with all activities of daily living and that, after two weeks, he would need assistance with these activities on an intermittent basis until his healing was completed. *Id*. ¶ 9. Dr. Grace later completed an updated Health Care Provider Certification noting that Mr. Thomas required additional assistance and, as such, Ms. Thomas was off work for an additional week to care for him. *Id*. ¶¶ 12–13. On October 11, 2019, the City granted Ms. Thomas' request for caretaking leave under state and federal FMLA for a period from September 30, 2019, to October 14, 2019. DPFOF ¶ 2. The City also approved Ms. Thomas' use of intermittent FMLA leave from October 21, 2019, until December 23, 2019. *Id*. ¶ 3.

Green Bay Metro maintains a Bus Operator Manual with standard operating procedures. *Id*. ¶ 10. Section 1.17 of the Bus Operator Manual addresses overtime and forced work time. It states, in pertinent part, as follows:

> An overtime signup sheet will be posted every Monday through Friday in the Driver's Break Room for the following week. Bus Operators are to check off each day they would like to be offered additional work.
>
> Order for offering additional work:
>
> 1. By seniority, Bus Operators who signed up for Overtime
>
> 2. By seniority, Part Time Bus Operators
>
> 3. By seniority, Bus Operators on vacation who signed up for additional work
>
> 4. Reverse seniority for forced work
>
> If no Bus Operator accepts the additional work it will be assigned by reverse seniority based on the complete list of full time Bus Operators and part time Bus Operators that are working that day. If a Bus Operator is being forced to work by reverse seniority the Bus Operator cannot refuse the work, except in situations of medical appointments with verification.

2

*Id.* ¶ 11. The purpose of the forced-time policy is to prevent situations where bus operators refuse to work forced time during a staffing shortage for reasons unrelated to medical or dental appointments. *Id.* ¶ 16. The City does not maintain any policies under which it requires employees to submit a doctor's note or other medical certification for each use of intermittent FMLA leave. *Id.* ¶ 17.

Based on reverse seniority, Ms. Thomas would have been scheduled for forced work on October 24, 2019, November 4, 2019, and November 22, 2019. *Id.* ¶ 13. Pursuant to the forced work policy, the City requested that Ms. Thomas provide proof of attendance at medical appointments for these dates. *Id.* ¶ 12. The City informed Ms. Thomas that the documentation could be vague and only needed to confirm that Ms. Thomas attended appointments on those days; the City did not need information about who the appointments were for or the reason for the appointments. *Id.* ¶ 15. The City did not require Ms. Thomas to work on those dates, even though she did not provide proof that she attended medical or dental appointments. *Id.* ¶ 14.

Ms. Thomas contends that various City employees repeatedly requested proof of attendance at medical appointments from her. On October 24, 2019, Operations Supervisor Chris Braatz entered Ms. Thomas' bus and told her that she needed to provide a doctor's note. PPFOF ¶ 17. On October 25, 2019, Operations Supervisor Patrick Schmidt followed up with Ms. Thomas about Braatz' request for a doctor's notes. *Id.* ¶ 18. Ms. Thomas responded that, as she had told Braatz, she had already submitted the proper FMLA certification and was not going to provide proof of attendance at medical appointments on the days she took intermittent leave. *Id.* On November 6, 2019, Braatz told Ms. Thomas that she needed to submit her medical notes by the next night. *Id.* ¶ 22. A City official also called Ms. Thomas outside of work hours and asked her to provide doctor's notes. *Id.* ¶ 26. The City disputes Ms. Thomas' assertions. On November 7,

3

2019, Ms. Thomas stated that she could not find any reference to the requirement to provide proof of attendance at medical appointments in the event of forced time. DPFOF ¶ 31. When the City attempted to show her the Operator Manual, she declined the invitation to review the manual with the City. *Id.*

Ms. Thomas contends further that, on November 12, 2019, City officials asked Ms. Thomas for doctor's notes and advised that if she had one more "unexcused absence," her employment would be terminated. PPFOF ¶ 27. That same day, Transit Director Patti Kiewiz informed Ms. Thomas that not providing further medical documentation would "jeopardize her job." *Id.* ¶ 29. The City also disputes these contentions. Ms. Thomas failed to show up for work on November 15, 2019. DPFOF ¶ 22. Her absence from work on this date was not FMLA-related. *Id.* ¶ 23. On November 25, 2019, the City met with Ms. Thomas regarding her failure to show up for work on November 15, 2019. At the meeting, the City confirmed that it needed proof of attendance at medical appointments for October 24, 2019, November 4, 2019, and November 22, 2019. *Id.* ¶ 28. Ms. Thomas refused to provide proof of attendance at medical appointments for these dates. *Id.* ¶ 29.

On December 9, 2019, Ms. Thomas submitted her letter of resignation, effective December 13, 2019. *Id.* ¶ 32. In her letter of resignation, Ms. Thomas stated that "[t]he stress of this position has become untenable. It is dangerous, unsafe, and unhealthy for me to continue." PPFOF ¶ 33. The City met with Ms. Thomas on December 10, 2019, to obtain additional information regarding her alleged safety concerns, but Ms. Thomas refused to provide information about those concerns. DPFOF ¶¶ 34–35. As a result, the City placed her on administrative leave through the end of her shift on December 12, 2019. Ms. Thomas contends that, as a result of continuously being asked for further medical documentation when she had already provided the necessary FMLA certification, she was experiencing daily anxiety over who was going to harass her or whether her

employment would be terminated and resigned from her position due to the stress and anxiety of the situation. PPFOF ¶¶ 34–35. Ms. Thomas believed that her termination was imminent, due to the fact that the Transit Director had stated that "failure" to provide proof of medical appointments could jeopardize Ms. Thomas' job. *Id.* ¶ 36.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Ms. Thomas brings two causes of action against the City of Green Bay: one styled "FMLA Interference" and the other styled "FMLA Retaliation." Dkt. No. 1 at 4–5. Under the FMLA, eligible employees are entitled to twelve workweeks of leave during any twelve-month period for a variety of reasons, including when it is necessary to "care for a spouse, or a son, daughter, or parent, of the employee." 29 U.S.C. §2612(a)(1)(C). The FMLA also makes it unlawful for any

employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, and right provided" by the FMLA. 29 U.S.C. §2615(a)(1). To succeed on an FMLA interference claim, Ms. Thomas must show that (1) she was eligible for FMLA protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer interfered with, restrained, or denied FMLA benefits to which she was entitled. *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022) (citation omitted). Ms. Thomas must also establish that she was prejudiced by the City's unlawful actions. *See id.*

The parties dispute whether the City interfered with the FMLA benefits to which Ms. Thomas was entitled and whether Ms. Thomas was prejudiced as a result. Ms. Thomas asserts that the City violated the FMLA by requesting that she provide proof of attendance at medical appointments for three specific dates pursuant to the City's forced time policy. According to Ms. Thomas, on at least ten separate occasions, the City repeatedly demanded, during and after her shifts, that Ms. Thomas provide verification of her attendance at medical appointments for the days she was scheduled to work forced time. For instance, City officials entered Ms. Thomas' bus and called Ms. Thomas outside of work hours to request a doctor's note. *See* PPFOF ¶¶ 17, 26. After Ms. Thomas advised that she had submitted an FMLA certification and would not provide additional documentation related to her FMLA-absences, the City issued disciplinary warnings or threatened termination. In particular, a City official informed Ms. Thomas that not providing medical documentation under the forced work policy would "jeopardize her job." *Id.* ¶ 29.

As the Seventh Circuit has recognized, threatening to discipline an employee for using FMLA leave to which she is entitled "clearly qualifies as interference with FMLA rights." *Ziccarelli*, 35 F.4th at 1090 (citing *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015)). Though the City disputes Ms. Thomas' version of events, the court must give

6

Ms. Thomas "the benefit of conflicting evidence about the substance of" her conversations with City officials regarding her use of intermittent leave during forced work time. *See id.* at 1089. Accepting Ms. Thomas' version of events as true, as the court is required to do at this stage, the court finds sufficient evidence from which a reasonable jury could conclude that the City interfered with her right to take FMLA leave and that the City's actions prejudiced her. Accordingly, the court denies the City's motion for summary judgment as to Ms. Thomas' FMLA interference claim.

Ms. Thomas also asserts a claim against the City for retaliation in violation of the FMLA. The FMLA makes it unlawful for any employer to retaliate against an employee for taking FMLA leave. *See Freelain v. Vill. of Oak Park*, 888 F.3d 895, 900 (7th Cir. 2018) (citing 29 U.S.C. § 2615). Stated differently, an employer "cannot use an employee's use of FMLA leave as a negative factor in promotion, termination, and other employment decisions." *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). To succeed on a retaliation claim, a plaintiff must establish that (1) she engaged in statutorily protected activity, (2) the employer took an adverse action against her, and (3) there is a causal connection between the two. *Freelain*, 888 F.3d at 901 (citation omitted). A retaliation claim "requires proof of discriminatory or retaliatory intent." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010) (internal quotation marks and citation omitted). "To count an employer's action as materially adverse, a plaintiff must show that the action would have 'dissuaded a reasonable worker from' engaging in protected activity." *Freelain*, 888 F.3d at 901–02 (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).

Ms. Thomas asserts that she faced a materially adverse employment action because she experienced multiple instances of disciplinary warnings or threats of termination from October 28, 2019, until she resigned on December 9, 2019, and that she was constructively discharged. A

constructive discharge constitutes an adverse employment action if the plaintiff shows that (1) she resigned due to alleged discriminatory harassment that made the working environment unbearable or (2) the employer acted in a manner such that the employee reasonably believed her termination was imminent. *See Ziccarelli*, 35 F.4th at 1091. Ms. Thomas maintains that she was repeatedly asked for verification of her attendance at medical appointments for three specific days that were classified as forced work days. Although the City maintains that it would have terminated Ms. Thomas for poor performance that was unrelated to her use of FMLA leave, Ms. Thomas maintains that, on November 12, 2019, Transit Director Kiewiz threatened that not providing further medical documentation to the City would "jeopardize her job." *Id.* ¶ 29. Ms. Thomas subsequently submitted her letter of resignation on December 9, 2019. Ms. Thomas has raised a genuine issue of material fact that she suffered retaliation under the FMLA. Accordingly, the City's motion for summary judgment on this issue must be denied.

## CONCLUSION

For these reasons, the City's motion for summary judgment (Dkt. No. 14) is **DENIED**. The Clerk is directed to schedule a telephone conference in this matter to address further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 14th day of November, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
